IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 1:15-cv-02391-CBS

ALLEGRA AMOTO o/b/o LAWRENCE MICHAEL AMOTO,

      Plaintiff,

v.

CAROLYN W. COLVIN,

      Defendant.

---

MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Craig B. Shaffer

    This action comes before the court pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33, for review of the Commissioner of Social Security's final decision denying Lawrence Michael Amoto's[1] ("Claimant") application for Disability Insurance Benefits ("DIB"). On January 14, 2016, the parties consented to the magistrate judge's jurisdiction to "conduct any and all further proceedings in this case, including the trial, and [to] order the entry of final judgment." Doc. 11. Accordingly, the case was referred to this court on March 22, 2016. Doc. 20. The court has carefully considered the Complaint (filed October 28, 2015) (Doc. 1), Plaintiff's Opening Brief (filed February 15, 2016) (Doc. 15), Defendant's Response Brief (filed March 2, 2016) (Doc. 16), Plaintiff's Reply (filed March 21, 2016) (Doc. 19), the entire case file,

---

[1] On February 4, 2016, a suggestion of death was filed, notifying this court that Mr. Amoto died on November 3, 2015. Doc. 13. Mr. Amoto's daughter, Allegra Amoto, was substituted as Plaintiff. Doc. 14.

the administrative record, and the applicable law. For the following reasons, the court affirms the Commissioner's decision.

## BACKGROUND

In January 2013, Claimant filed an application for disability benefits and alleged that he became disabled in November 2010. (*See* Social Security Administrative Record (hereinafter "AR") at 14, 30, 107-113). Mr. Amoto alleged that his ability to work was limited by Hepatitis C, chronic fatigue, osteoarthritis in hands, metatarsalgia, tennis elbow, low back pain, hip pain, and high blood pressure. *See Id*. at 132. Mr. Amoto was born on February 2, 1952, and was 58 years old on the date of his alleged disability onset. *Id*. at 107. He completed the 12th grade and had previous work experience as a carpenter and a construction flagger. *Id*. at 133. After his initial application was denied, Claimant requested a hearing, which was held on August 8, 2014, before an Administrative Law Judge ("ALJ"). *See Id*. at 27-45, 70-77.

Claimant was represented by counsel at the hearing and testified that due to his chronic fatigue, he had difficultly lifting objects and that he could only walk one city block before needing to stop and rest. *Id*. at 31. He also testified that although he used to be his brother's live-in caretaker, his ailments made it difficult to take care of even himself. *Id*. at 32-33. He stated that he did not do any yard work, did very little cooking, rarely drove, performed few house chores, and often had to take naps during the middle of the day. *Id*. at 32-35, 41. He also testified that one of the side effects of his medication was depression. *Id*. at 36. According to Mr. Amoto, he was also easily irritated, had memory and concentration problems, and had difficulty being out in public due to his confusion. *Id*. 36-37.

A vocational expert ("VE") also testified at the hearing. *Id*. at 43-45. The ALJ asked the VE to assume hypothetically that an individual of Claimant's age — with the same education

and past work experience as Claimant — had the following limitations: (1) perform work at a light exertional level; (2) occasional bending, squatting, kneeling; and (3) no complex tasks, defined as SVP: 2 or less. *Id*. at 44.

Based on these limitations, the VE testified that Mr. Amoto could perform his past relevant work as a flagger. *Id*. The ALJ then posed a second hypothetical and asked the VE to assume the same non-exertional limitations, but to limit the exertional to sedentary. *Id*. The VE testified that the individual would not be able to perform any of the past relevant work. *Id*.

Claimant's counsel then asked the VE to assume that the individual would be absent from work more than two times per month. *Id*. The VE testified that there would be no competitive employment for such an individual. *Id*. at 45. Counsel also asked whether all competitive work would be precluded if the individual would regularly be off task more than 20 percent of an eight-hour work day. *Id*. The VE agreed that all work would be eliminated. *Id*.

On August 22, 2014, the ALJ issued his decision denying benefits. *Id*. at 11-25. The ALJ's opinion followed the five-step process outlined in the Social Security regulations.[2] At step one, the ALJ found that Claimant had not engaged in substantial gainful employment since November 15, 2010. *Id*. at 16. At step two, the ALJ found that Claimant had the following severe impairments: (1) lumbar degenerative disc disease; (2) hepatitis C; (3) coronary artery disease; (4) depression; and (5) anxiety. *Id*. At step three, the ALJ found that Mr. Amoto did not have an impairment that met or medically equaled a listed impairment. *Id*. at 17-18.

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to past relevant work; and, if not (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. §§ 404.1520 and 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988). After step three, the ALJ is required to assess the claimant's functional residual capacity. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Social Security Administration bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

>The ALJ then assessed the following residual functional capacity ("RFC"):
>
>>After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can only occasionally bend, squat and kneel. The claimant can only occasionally deal with the general public and requires work that does not involve complex tasks (i.e., work with an SVP of 2 or less).

*Id*. at 18. In fashioning Claimant's RFC, the ALJ discussed much of the medical evidence in Claimant's records. The ALJ concluded that although Mr. Amoto's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. *Id*.

The ALJ specifically noted that Claimant's medical records were not consistent with his allegations of total disability. *Id*. In particular, the ALJ noted the lack of medical records to support Mr. Amoto's claims. For example, although he claimed disability beginning in November 2010, the record contained no medical evidence prior to December 2011. *Id*. at 18. Further — following a solitary podiatry appointment in December 2011 — there were no medical appointments until the last half of 2012. *Id*. at 18-19. In addition, the ALJ credited the opinion of Dr. Brett L. Barney, M.D., a consultative examiner who examined Claimant and prepared a report. *Id*. at 19, 254-62. Dr. Barney concluded that Mr. Amoto had the capacity to work at a medium exertional level; however, the ALJ concluded that Claimant was somewhat more limited. *Id*.

At step four, the ALJ concluded that Claimant was able to perform his past relevant work as a construction flagger. *Id*. at 20. Consequently, the ALJ found that Mr. Amoto did not meet

the definition of "disabled" for purposes of the Social Security Act. *Id*. at 21. Accordingly, his application for disability benefits was denied.

Following the ALJ's decision, Mr. Amoto requested review by the Appeals Council. *Id*. at 7-10. The Appeals Council denied his request on August 28, 2015. *Id*. at 1-6. The decision of the ALJ then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Mr. Amoto filed this action on October 28, 2015. Doc. 1. The court has jurisdiction to review the final decision of the Commissioner. 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test

has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted).  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## ANALYSIS

On appeal, Plaintiff argues that the ALJ (1) erred in his evaluation of a treating source opinion; (2) erred in accepting the VE's testimony that Mr. Amoto could perform past work as a flagger; (3) improperly accounted for Mr. Amoto's mental limitations in the RFC; and (4) erred in his assessment of Mr. Amoto's credibility.

**A.    Evaluation of Medical Opinions**

In 2014, Suzanne Holm, DNP, filled out a form regarding Claimant's physical RFC. AR at 391-92. This form was co-signed by Diana Hornung, M.D. *Id*. at 392. In filling out this form, Ms. Holm[3] opined that Mr. Amoto was more limited in his capabilities than the RFC values assigned by the ALJ; however, the ALJ ultimately concluded that this opinion was entitled to very little weight. *Id*. at 20. On appeal, Plaintiff contends that the ALJ erred in his assessment of a treating source opinion. Doc. 15 at 3-9. In particular, Plaintiff characterizes the physical RFC assessment as the treating source opinion of Dr. Hornung, as opposed to Ms. Holm. *Id*. In response, Defendant contends that Dr. Hornung is not properly characterized as a treating source

---

[3] The court is respectful of the fact that Ms. Holm is a Doctor of Nursing Practice. AR at 392. Nevertheless, under the regulations, she is not considered an "acceptable medical source." *See* 20 C.F.R. § 404.1513(a) (defining — for the purposes of this case — "acceptable medical sources" as licensed physicians and licensed or certified psychologists); *see also* Social Security Ruling 06-03p, 2006 WL 2329939 at *1 (SSA Aug. 9, 2006). As such, she cannot issue medical opinions, *see* 20 C.F.R. § 404.1527(a)(2), nor be considered a treating source whose opinion must be evaluated to determine whether it is entitled to controlling weight, *see* C.F.R. § 404.1513(d). *See also* Social Security Ruling 06-03p, 2006 WL 2329939 at *2; *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007).

and, in any event, the ALJ properly evaluated the at-issue opinion. Doc. 16 at 7-12. The court agrees with Defendant.

Under the regulation, "[t]reating source medical opinions are . . . entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p). The Tenth Circuit has set forth those factors as

> (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id*. at 1301 (internal quotation marks omitted).

Plaintiff contends that the ALJ failed to give Dr. Hornung's opinion controlling weight and failed to supply specific, legitimate reasons for rejecting it. Even accepting, *arguendo*, that the physical RFC represented the opinions of Dr. Hornung,[4] "[t]he threshold question is whether [Dr. Hornung] was in fact a 'treating physician' within the meaning of the regulations. If not, [her] opinion was not entitled to the presumption of controlling weight accorded to the properly supported opinion of a treating physician." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

A treating source is a medical professional capable of providing a detailed and longitudinal picture of a claimant's medical impairments. 20 C.F.R. § 404.1527(c)(2). It is a

---

[4] Plaintiff characterizes this particular RFC as being Dr. Hornung's opinions and co-signed by Ms. Holm. However, in comparing the mental RFC form (to which Ms. Holm is the sole signatory) and the physical RFC form, it is quite obvious — based on the handwriting — that the physical RFC was prepared by Ms. Holm. *Compare* AR 352-54 *with* AR 391-92.

relationship that requires both duration and frequency. *Doyal*, 331 F.3d at 763; *see also Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) ("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records."). "A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as [his] treating source." *Doyal*, 331 F.3d at 763.

Plaintiff's assertion that Dr. Hornung served as Mr. Amoto's treating physician appears to be based primarily on the fact that Dr. Hornung is listed as the "PCP" in Mr. Amoto's medical records. *See* AR at 231, 235. However, as Defendant correctly observes, the medical record contains exactly one record of Claimant being treated by Dr. Hornung. In November 2013, Dr. Hornung apparently saw Mr. Amoto in regard to a blood draw procedure.[5] AR at 388-89. Although Claimant's other medical records list Dr. Hornung as his primary physician, there is no indication that Dr. Hornung ever provided any specific treatment. Instead, Mr. Amoto was regularly seen by Ms. Holm, Ms. Jaime Zelkin, N.P., or Ms. Catherine Crowe, D.O. *Id*. at 193-225, 231-44, 352-54, 375-87. Thus, the record fails to reflect that Dr. Hornung qualifies as Claimant's treating physician. Consequently, the ALJ was not required to give the physical RFC controlling weight, or to give specific reasons for not giving it controlling weight.

Nevertheless, the ALJ — as he was required to do — considered the physical RFC and provided specific, legitimate reasons for according it little weight. *Id*. at 20. *See* 20 C.F.R. § 404.1527(c)(1)-(6) ("Regardless of its source, we will evaluate every medical opinion we

---

[5] It is not clear that Dr. Hornung actually performed the procedure because another individual, Heather Brown, is also listed in the record. AR at 388.

receive."); SSR 96–5P, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored."); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (regulations do not require the ALJ to specifically discuss all of the factors). Here, the ALJ considered several factors in determining what weight to give the physical RFC. Specifically, the ALJ concluded that the extreme restrictions advocated in the physical RFC were inconsistent with the medical evidence. 20 C.F.R. § 404.1527(c)(4) (consistency). In addition, the ALJ noted that the RFC did not cite any objective findings to support the extreme limitation. *Id.* § 404.1527(c)(3) (supportability). Substantial evidence supports the ALJ's decision on these points; accordingly, the court finds no cause for remand on this issue.

**B.     Ability to Perform Past Work**

Plaintiff next contends that the ALJ's step four conclusions were not supported by substantial evidence. Doc. 15 at 9-11. Specifically, Plaintiff contends that there was a conflict between the VE's testimony and the description of a flagger in the Dictionary of Occupational Titles. Without citation to any case law or otherwise, and apparently based upon Plaintiff's own interpretation of the job duties, Plaintiff contends that the position of a flagger would require more than occasional contact with the general public. Doc. 15 at 10-11. However, as Defendant correctly observes, the Dictionary of Occupational Titles specifically states that talking is only *occasionally* required. *See* DOT # 372.667-022 (Flagger), 1991 WL 673097. Without more, the court is not persuaded that a conflict exists and, therefore, rejects Plaintiff's argument that remand is necessary to address these alleged inconsistencies.

Furthermore, the ALJ's conclusion that Mr. Amoto was capable of performing his past work as a flagger is, in fact, supported by the substantial evidence. During the hearing the VE

testified that Claimant's past work as a flagger was classified as light work with an SVP of 2 (i.e., no complex tasks). AR at 44. The ALJ then posed a hypothetical to the VE that incorporated all of the limitations that were ultimately adopted in the RFC. *Id*. The VE testified[6] that these impairments would not prevent Mr. Amoto from performing his past work as a flagger. *Id*. The ALJ then relied on this testimony in make his findings at step four. *Id*. at 20. The VE's uncontested testimony constitutes sufficient evidence to sustain the finding that Mr. Amoto's impairment did not prevent him from performing his past relevant work as a flagger. *See Doyal*, 331 F.3d at 761 (An "ALJ may rely on the information supplied by the VE at step four.").

**C.     Mental RFC**

During his step-three assessment of whether Claimant's mental impairments satisfied the "paragraph B" criteria, the ALJ gave Mr. Amoto "considerable benefit of the doubt" and determined that he suffered moderate limitations. AR at 18. On appeal, Plaintiff contends that the ALJ's RFC limitation — to occasional interaction with the public and work that does not require complex tasks — was inadequate to account for these moderate impairments. The court finds no cause for remand.

The "paragraph B" criteria are: "[a]ctivities of daily living, social functioning, and maintaining concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00C. However, as the ALJ recognized, determinations at step three are different from those at step four. *See Roman Jimenez v. Colvin*, No. 12 Civ. 6001(PGG)(FM), 2014 WL 572721 (S.D.N.Y. Feb. 13, 2014). Indeed, the ALJ specifically noted that the limitations identified at step three "are not [an RFC] assessment . . . . The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed

---

[6] The court also notes that Claimant's attorney did not challenge the VE's professional qualifications. AR at 43.

assessment by itemizing various functions." AR at 18. "In other words, identifying an impairment at step three — even a marked impairment — does not define the scope of residual functional capacity." *Roman Jimenez*, 2014 WL 572721, at *14; *see, e.g., Anderson v. Colvin*, No. 12–1102, 2013 WL 1339379, at *6 (10th Cir. Apr. 4, 2013) ("the ALJ was not required to include any of [the doctor's] 'B criteria' opinions in his RFC assessment"). "The SSA has made clear that the 'RFC assessment must be based on all of the relevant evidence in the case record . . . .' however, *it does not require the ALJ* to explain the RFC in any particular way or *to explicitly incorporate his findings at steps two and three into his written RFC*." *Nguyen v. Colvin*, No. 13-cv-2609-KLM, 2015 WL 148667, at *9 (D. Colo. Jan. 12, 2015) (quoting SSR 96–8p, 1996 WL 374184, at *5 (July 2, 1996)) (emphasis added).

Once an impairment is determined to be severe, it must be reflected in the RFC. *See Hargis v. Sullivan*, 945 F.2d 1482, 1488 (10th Cir. 1991). Here, the ALJ did include a restriction based on Claimant's severe mental impairments of depression and anxiety by limiting Mr. Amoto to only occasional interaction with the public and to work that involves no complex tasks. AR at 20. In so doing, the ALJ considered the evidence that Mr. Amoto's mood and anxiety had been described as "situational," and that his health, his brother's health, and his divorce had been cited in this regard. *Id*. (citing AR at 194). In addition, the records indicate that Mr. Amoto's depression and anxiety were managed with medication, and Mr. Amoto stated that he was not interested in counseling. *Id*. at 232, 236. The ALJ also observed that Claimant's examination notes generally reflected good eye contact, pleasantness, cooperativeness, good memory, and good judgment. *Id*. (citing AR at 193-226).

The ALJ's determinations at step three — that Claimant exhibited moderate difficulty with regard to the "paragraph B" criteria — did not necessarily dictate a work-related functional

11

limitation for the purposes of the RFC assessment. *Roman Jimenez*, 2014 WL 572721, at *14; *Anderson*, 2013 WL 1339379, at *6; *see also Beasley v. Colvin*, 520 F. App'x 748, 754 & n.3 (10th Cir. 2013) (declining claimant's invitation to require an ALJ's RFC to mirror step three findings). Indeed, the ALJ specifically gave Ms. Holm's "check-form opinion" — which stated that Claimant had moderate limitations in these areas — very little weight. AR at 17. The ALJ observed that Ms. Holm had not cited any objective findings to support her assessment, and also that there was no evidence that Ms. Holm was familiar with the standards and evidentiary requirements of the disability program. *Id.* And tellingly, Plaintiff has not cited any other evidence, apart from Ms. Holm's assessments, that would contradict the ALJ's conclusions in this regard.[7]

Plaintiff contends that the ALJ's determination, that Mr. Amoto could perform work as a flagger, is flawed because this position would not permit for a lapse in concentration or persistence. Doc. 15 at 14. Like the preceding argument,[8] this contention appears to be based solely upon Plaintiff's lay assessment of the job's duties and requirements. Moreover, the Social Security Administration Program Operations Manual System ("POMS") instructs that a claimant's ability to concentrate is "not critical" to performing unskilled work. *See* POMS § 25020.010(B)(3), *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (last visited March 24, 2017). POMS states that "[t]he basic mental demands of unskilled work include the abilities (on a sustained basis) to: [1] understand, carry out, and remember simple instructions; [2] make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; [3] respond appropriately to supervision, coworkers and work

---

[7] Plaintiff again characterizes the physical RFC form as the opinions of Dr. Hornung. *See* Doc. 12 at n.3. As the court has previously discussed, whether or not this RFC reflected the opinions of Dr. Hornung — or those of Ms. Holm — the ALJ decision to give this opinion little weight was supported by substantial evidence.

[8] *See* Section B., *supra*.

situations; and [4] deal with changes in a routine work setting." *Id.* at § DI 25050.010(A)(3)(a). A substantial loss of ability to meet these basic mental demands "severely limits the potential occupational base and thus, would justify a finding of inability to perform other work . . . ." *Id.* at § DI 25050.010(A)(3)(b). POMS notes that "substantial loss" cannot be precisely defined, but the court has no reason to find that moderate limitations in concentration or persistence would qualify as a complete inability to perform such work. Therefore, the court concludes that the ALJ did not err in defining Mr. Amoto's mental RFC limitations.

### D. Credibility Assessment

Finally, Plaintiff contends that the ALJ's credibility assessment was erroneous because the ALJ did not consider Mr. Amoto's good work history. The court is not persuaded.

The ALJ normally determines the weight and credibility of testimony, and these determinations are generally considered binding on the reviewing court. *See White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

> In evaluating a claimant's credibility, the ALJ should consider factors such as:
>
>> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991)). The ALJ is not required to discuss these factor-by-factor. *See Qualls*, 206 F.3d at 1372 (Tenth Circuit precedent does not require a formalistic factor-by-factor recitation). The credibility determination must be supported by specific evidence. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (discussing *Kepler v. Chater*, 68 F.3d 387, 391 (10th

Cir. 1995)). Under Tenth Circuit precedent, "[t]he only question this court must answer is whether the ALJ's [credibility] determination . . . [was] closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion." *Stokes v. Astrue*, 274 F. App'x 675, 686 (10th Cir. 2008) (declining to adopt a bright-line rule that an ALJ must consider a good work history in the credibility determination).

In this instance, the ALJ accurately summarized the record and explained his reasons for discounting Mr. Amoto's credibility. Chief among these reasons was the "dearth of medical evidence in the two year period following the alleged onset date." AR at 19. The ALJ also cited the disparity between Claimant's medical records and his claims of total disability. *Id*. In particular, the ALJ observed that Claimant had characterized his heart symptoms as mild, and also that Plaintiff's pain was treated conservatively and did not always require medication. *Id*. (citing AR at 257-62, 268-74). Further, the results of the consultative examination were "quite benign." *Id*. (citing AR at 257-62). The ALJ also noted that Mr. Amoto's claims of limited activities of daily living were difficult to reconcile with the longitudinal medical record. *Id*. at 20. Because there was adequate record support for the ALJ's conclusion, and because Mr. Amoto's work history does not overwhelm this evidence, the court sees no reason to overturn the ALJ's credibility determination.[9]

---

[9] Further, the court concludes that *Lloyd v. Colvin*, No. 12-cv-03350-RBJ-KLM, 2014 WL 503765 (D. Colo. Feb. 6, 2014), upon which Plaintiff relies, is distinguishable. In that case, the ALJ characterized the claimant's work history as weak, which was not supported by the record. In addition, the court observes that the claimant in *Tyson v. Apfel*, 107 F. Supp.2d 1267 (D. Colo. 2000), quit work on the advice of her doctor when her pain worsened and then she consistently attempted to work despite her impairments. Here, Mr. Amoto left his employment as a carpenter — apparently due to issues from arthritis — over three years before the alleged onset date. *See* AR at 133. However, the ALJ concluded that Mr. Amoto's arthritis was not severe, and Plaintiff has not challenged that determination. Thus, *Tyson* is also distinguishable from the facts of this case.

## CONCLUSION

The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude under the law and regulations that Mr. Amoto was not disabled within the meaning of Title II and, therefore, not eligible to receive Disability Insurance Benefits. Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own fees and costs.

DATED at Denver, Colorado, this 28th day of March, 2017.

BY THE COURT:

*s/Craig B. Shaffer*
United States Magistrate Judge